**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

GUY MCEACHIN,

                                        Plaintiff

                    - v -                                    9:04-CV-0083
                                                              (FJS/RFT)

DONALD SELSKY, Director of SHU, DOCS
JEFF MINNERLY, Plant Worker, Auburn C.F.,
VIRGINIA ANDROSKO, Facility Nurse, Auburn C.F.,
J. PORTEN, C.O. Auburn C.F.
                                        Defendants
_____

**APPEARANCES:**                                 **OF COUNSEL:**
GUY MCEACHIN
Plaintiff, _Pro Se_
00-A-5257
Attica Correctional Facility
P.O. Box 149
Attica, New York 14011

HON. ELIOT SPITZER                               MARIA MORAN, ESQ.
Attorney General of the State of New York        Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224


**RANDOLPH F. TREECE**
**U.S. MAGISTRATE JUDGE**


                    <u>**REPORT-RECOMMENDATION and ORDER**</u>

        _Pro Se_ Plaintiff Guy McEachin, currently incarcerated at Attica Correctional Facility,[1] brings

a civil right action pursuant to 42 U.S.C. § 1983.  Dkt. No. 1, Compl.  In his Complaint, McEachin

_____

        [1] At the time this Plaintiff filed his Complaint with the Clerk of the Court, he was housed at Upstate
Correctional Facility located in Pine City, New York.  Dkt. No. 1, Compl.

alleges two causes of action and claims therein that the Defendants violated his First, Fifth, Eighth, and Fourteenth Amendment rights.

Defendants have moved for dismissal of the Complaint pursuant to FED. R. CIV. P. 12(b)(6). Dkt. No. 14.[2]  On October 25, 2004, the Plaintiff's Opposition to the Motion to Dismiss was filed with the Clerk of the Court.  Dkt. No. 16.  For the reasons that follow, this Court recommends **granting** the Defendants' Motion for Dismissal.

## I.  BACKGROUND

The following facts are derived from the Complaint, which on a motion to dismiss, this Court must construe as true.  There are two independent scenarios upon which the Plaintiff alleges his constitutional rights were violated.  According to the Complaint, on January 5, 2001, while McEachin was incarcerated at Auburn Correctional Facility, Correctional Officer (C.O.) J. Porten, filed a misbehavior report against McEachin alleging, *inter alia*, violations of prison rules by refusing a direct order, making threats and harassment, and causing property damage.  Dkt. No. 1, Compl. at ¶¶ 6(A) & 7.  McEachin asserts that the misbehavior report was false because he was not present when these offenses were purportedly committed and retaliatory in that the report was issued six days after McEachin had filed a written "grievance and complaint" against Porten's coworkers who "beat Plaintiff unnecessarily."  *Id.* at ¶¶ 6(A), (B) & (F).  On January 11, 2001, Jeff Minnerly conducted a hearing on the misbehavior report.  Minnerly rejected the Plaintiff's defenses and found McEachin guilty of each violation.  *Id.* at ¶¶ 6 (D)-(F).  The Plaintiff was sent to the Special Housing Unit (SHU) for 120 days, with a corresponding loss of recreation, packages, phones, and commissary privileges, and, further, recommended a lost 180 days of good time.  *Id.* at ¶¶ 6(D) &

---

[2]  This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

(E).  Minnerly's determination was affirmed by Donald Selsky, Director of Special Housing/Inmate

Disciplinary Program for the New York State Department of Correctional Services (DOCS).  *Id.* at ¶

6(H).

On May 8, 2001, Nurse Virginia Androsko wrote the Plaintiff a misbehavior report charging

him with violating prison rules 107.10 (interference) and 107.11(harassment).  *Id*. at ¶¶ 6(J), (K).  A

Tier III hearing was held on June 18, 2001, and McEachin was found guilty.  He received a further

penalty of 40 days in SHU, a corresponding loss of privileges, and a recommended "two-month"

loss of good time.  *Id.* at ¶ 6(K).  Similarly, Donald Selsky upheld the determination upon appeal.

*Id.* at ¶ 6(L).

## II.  DISCUSSION

### A.  Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz*

*v. Beto*, 405 U.S. 319, 322 (1972).  "Generally, in determining a 12(b)(6) motion, the court may

only consider those matters alleged in the complaint, documents attached to the complaint, and

matters to which the court may take judicial notice."  *Spence v. Senkowski*, 1997 WL 394667, at *2

(N.D.N.Y. July 3, 1997).  On a motion to dismiss, the trial court's function "is merely to assess the

legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in

support thereof."  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  "[T]he issue is not

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

support the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn

from the "well-pleaded" allegations of the complaint.  *See Retail Clerks Intern. Ass'n, Local 1625,*

*AFL-CIO v. Schermerhorn*, 373 U.S. 746, 753 n. 6 (1963).  Thus, the plaintiff need not necessarily

plead a particular fact if that fact is a reasonable inference from facts properly alleged.  *See id.; see*

*also Wheeldin v. Wheeler*, 373 U.S. 647, 648 (1963) (inferring facts from allegations of complaint).

In construing the complaint favorably to the pleader, the court may not dismiss the complaint for

failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in

support of the claim which would entitle him or her to relief.  *See Hishon v. King & Spalding*, 467

U.S. 69, 73 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *see also Scheuer v.*

*Rhodes*, 416 U.S. at 236; *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994).  In spite of the

deference the court is bound to give to the plaintiff's allegations, however, it is not proper for the

court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the

defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors*

*of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

### B.  Plaintiff's Claims

As aforestated, McEachin alleges two causes of action.  However, a more careful reading of

the Complaint exposes multiple causes of action, notwithstanding his efforts to  compartmentalize

them into two discrete actions.  Discernment of the multiple causes of action are best ascertained by

viewing them in the context of the two scenarios.  As to the January 5, 2001 incident, McEachin

asserts that both Porten and Minnerly, in their respective roles regarding the issuance and the

determination on the misbehavior report, violated his First (retaliation), Fifth, Eighth (cruel and

inhuman punishment) and Fourteenth (denial of due process, both procedurally and substantively)

Amendment rights.  As to the misbehavior report issued by Nurse Androsko on May 8, 2001,

McEachin asserts that she violated his Eighth (cruel an inhuman punishment) and Fourteenth (denial

of due process) Amendment rights.  Particularly, the Complaint declares Androsko, who is not a correctional officer, did not have the authority to issue such a misbehavior report, according to *Milburn v. Coughlin*, 79-CV-5077, Consent Decree, dated August 1, 1991.  Under this Consent Decree, McEachin proclaims that discipline or misbehavior reports are to be written only by security staff and not by health care providers, and, as such, his rights were violated.  *Id.* at ¶¶ 6(O) & 7.  As for Selsky, who heard appeals on both of these misbehavior reports, McEachin asserts that he too violated McEachin's Eighth and Fourteenth Amendment rights when he upheld each guilty determination.  *Id.* at ¶ 7.

### C.  Eleventh Amendment to the United States Constitution

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  Although by its terms, the amendment bars suit by citizens of one state against another state, the Supreme Court has held that such amendment similarly bars suits against a state by its own citizens.  *Hans v. Louisiana*, 134 U.S. 1 (1890).  "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'"  *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (*citing Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984))).  Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the state, including a state agency in federal court.  *Pennhurst,* 465 U.S. at 98; *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993); *Daisernia v. State of New York*, 582 F. Supp. 792 (N.D.N.Y. 1984).  To the extent a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state,

and the official is entitled to invoke the eleventh amendment immunity belonging to the state."
*Rourke v. New York State Dep't. of Corr. Servs.* 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (citing
*Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.), *cert. denied,* 510 U.S. 1073 (1994); *Ying
Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993)); *see also Mathie v. Fries*, 121 F.3d
808, 818 (2d Cir. 1997) ("A claim against a government officer in his official capacity is, and
should be treated as, a claim against the entity that employs the officer . . . .").

However, whether state officials sued in their official capacities are entitled to Eleventh
Amendment immunity depends also upon the relief sought in the complaint.  The Second Circuit
has held that in accordance with *Ex parte Young*, 209 U.S. 123 (1908), "acts of state officials that
violate federal constitutional rights are deemed not to be acts of the state and may be subject to
injunctive or declaratory relief in federal court."  *Berman Enters., Inc. v. Jorling,* 3 F.3d at 606; *see
also Rourke*, 915 F. Supp. at 540.  Since the only relief sought herein is compensatory monetary
relief,[3] Plaintiff's claims against all Defendants in their official capacities should be **dismissed**.

### D.   Exhaustion of Remedies

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that for actions
brought by prisoners under 42 U.S.C. § 1983, the inmate must first exhaust his or her administrative
remedies.  The Supreme Court has held that "the PLRA's exhaustion requirement applies to all
inmate suits about prison life, whether they involve general circumstances or particular episodes,
and whether they allege excessive force or some other wrong.  *Porter v. Nussle*, 534 U.S. 516, 532
(2002).  Exhaustion is similarly required even if the prisoner asserts futility as an excuse.  *See Booth*

---

[3]  The Complaint states, in sum and substance, "each defendant is sued in their individual and official capacity in the amount of $500,000 in compensatory damages . . . $500,000 in punitive damages . . . and $500,000 for past pain, suffering and mental anguish."  Compl. 1 at ¶ 9.  Injunctive relief is not sought.  *Id.*

*v. Churner*, 531 U.S. 731, 741 n.6 (2001) (refusing to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise") (cited in *Marvin v. Goord*, 255 F.3d 40, 43 (2d Cir. 2001)).  Accordingly, the exhaustion requirements apply even where the grievance process does not permit an award of money damages and the prisoner seeks only money damages, provided the grievance tribunal has the authority to take some responsive action.  *See Thomas v. Wright,* 2002 WL 31309190, at *5 (N.D.N.Y. Oct. 11, 2002) (citing *Booth v. Churner*, 531 U.S. 731 (2001)).

In New York State, the administrative remedies consist of a three-step review process.  First, a grievance is submitted to the Inmate Grievance Review Committee ("IGRC"), a committee comprised of both inmates and facility employees.[4]  The IGRC reviews and investigates the formal complaints and then issues a written determination.  Second, if the IGRC decision is appealed, the superintendent of the facility reviews the IGRC's determination and issues a decision.  Finally, if the superintendent's decision is appealed, the Cental Office Review Committee ("CORC") makes the final administrative determination.  N.Y. COMP. CODES R. & REGS. tit. 7, § 701.7.  Upon exhaustion of these three levels of review, a prisoner may seek relief pursuant to § 1983 in federal court.  *Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing *Sulton v. Greiner*, 2000 WL 1809284, at *3 (S.D.N.Y. Dec.11, 2000)); *Petit v. Bender*, 2000 WL 303280, at *2-3 (S.D.N.Y. Mar. 22, 2000).

Exhaustion of administrative remedies under the PLRA is an affirmative defense which must be raised by the defendants.  *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999).  Once raised,

---

[4] The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chair (who may be an inmate, staff member of volunteer).  N.Y. COMP. CODES R. & REGS tit. 7, § 701.4.

the defendants bear the burden of proving that administrative remedies have not been exhausted. *Howard v. Goord*, 1999 WL 1288679, at * 3 (E.D.N.Y. Dec. 28, 1999).  The party opposing the affirmative defense "may delay the ultimate determination as to its validity until trial by showing that there is a genuine issue of material fact to be determined." *Id.* (citations omitted).

The Defendants agree that the Plaintiff's Fourteenth Amendment Due Process claims regarding both the January 5, 2001 and May 8, 2001 misbehavior reports were properly addressed in the administrative appeal process for inmate misbehavior reports.  Denial of due process was a constituent element of both appeals upon which the Defendants have received full knowledge of Plaintiff's claims.  To require McEachin to pursue a further administrative review on his due process claims, which the Defendants are not, would border upon the absurd and could not have been contemplated by Congress when enacting the PLRA.  Thus, at least in terms of his due process claims, he has exhausted his available administrative remedies.  *Ortiz v. McBride,* 380 F.3d 649, 653-54 (2d Cir. 2004); *McCoy v. Goord,* 255 F. Supp. 2d 233, 256 (S.D.N.Y. 2003) (citing *Samuels v. Selsky,* 2002 WL 31040370, at *8 (S.D.N.Y. Sept. 12, 2002) (noting that issues except those "directly tied" (such as a due process claim) to the disciplinary hearing and any appeal must be appealed collaterally through the IGRC) (internal quotations omitted)).

With respect to the Plaintiff's First and Eighth Amendment claims, however, the Defendants raise that the Plaintiff failed to exhaust his administrative remedies insofar as he did not submit these claims to the IGRC, or any other grievance process, to which the Plaintiff somewhat concedes. *See* Compl. at ¶ 4(b), (c)(iii); Dkt. No. 16, Pl.'s Reply, dated Oct. 17, 2004, at Point II.  Plaintiff's purported reasons for not submitting his First and Eighth Amendment claims through the grievance process are somewhat convoluted, if not inimical to each other.  In one vein, he argues that such

claims are non-grievable issues. That argument is juxtaposed against his other justification wherein he states that he did complain to the facility about the facts alleged in his Complaint. *Compare* Compl. at ¶ 4(b)(ii) ("Q: did you present the fact relating to your complaint - A: No"; "non-grieveable issue pursuant to Directive 4040" *with* ¶ 4(c)(i ) (Plaintiff states he complained to prison authorities about the facts in the complaint by "fil[ing] an administrative appeal with Defendant Selsky . . . and fil[ing] a Reconsideration to Defendant Selsky").

In addressing his first stated position, that is that his First and Eighth Amendment claims are not grievable, we find his reasoning is in error.  The PLRA's exhaustion requirement applies to **all** inmate suits about prison life, with no exceptions, thus all are "grievable." *Porter v. Nussle*, 534 U.S. 516 ( 2002).  In this respect, the Second Circuit has long held that "retaliation claims fit within the category of inmate suits about prison life, and must be preceded by the exhaustion of state administrative remedies available." *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (citing *Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002) (internal quotations omitted)).  Similarly, it has been this Circuit's long term view that Eighth Amendment claims, especially those pertaining to the duration and treatment during a SHU confinement, have always been subject to the exhaustion requirements. *See e.g.*, *Ortiz v. McBride*, 380 F.3d at 656.  Under these circumstances, McEachin's failure to exhaust would be considered fatal to his Complaint.  However, the question of exhaustion now turns to McEachin's later position, that being whether the correctional facility was indeed notified of the nature of his claims by virtue of his administrative appeals.

So long as the prisoner's grievance "present[s] the relevant factual circumstances giving rise to a potential claim . . . sufficient under the circumstances to put the prison on notice of potential claims and to fulfill the basic purposes of the exhaustion requirement  . . . . [t]here does not appear

to be any reason to require a prisoner to present fully developed legal and factual claims at the administrative level." *Sulton v. Wright*, 265 F. Supp. 2d 292, 298 (S.D.N.Y. 2003) (quoting *Irvin v. Zamora,* 161 F. Supp. 2d 1125, 1134-35 (S.D. Cal. 2001) and further citing *Lewis v. Washington*, 197 F.R.D. 611, 614 (N.D. Ill. 2000)); *see also Strong v. David*, 297 F.3d 646, 649-50 (7th Cir. 2002) (citing *Booth v. Churner*, 532 U.S. 731, for the proposition that the PLRA requires prisoners to exhaust a process and not a remedy).  Indeed, New York State's regulations prescribing the content to be included in a prisoner grievance states that in addition to administrative information, such as grievant's name and housing unit, the grievance "must contain a concise, specific description of the problem and the action requested . . . ."  N.Y. COMP. CODES R. & REGS., tit. 7, § 701.7(a)(1)(i).  Therefore, we must determine whether McEachin's submission of his issues to the Defendants during the disciplinary hearing and appeal process was sufficient to put them on notice of all of his concerns and complaints, obviating the need for him to press his complaints in another administrative process.

The Second Circuit has fully recognized the principle that the PLRA's exhaustion requirement is primarily designed to "afford correction officials time and opportunity to address complaints internally," and if the "[un-counseled] inmates provide enough information about the conduct of which [he] complain[s]" to the institution during the disciplinary process, he may have exhausted his claim.  *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524-25 and *Strong v. David*, 297 F.3d at 650).

Considering first McEachin's Eighth Amendment claim, it is inconceivable that he could have raised or grieved this claim at his disciplinary hearing and/or subsequent appeals insofar as the punishment levied against him could not have ripened into being "cruel and inhuman" at that

juncture.  On this account, the Plaintiff failed to exhaust his Eighth Amendment claims.  However, the issue of whether Plaintiff failed to exhaust available administrative remedies on the First Amendment claim cannot be resolved at this stage of the litigation.  Plaintiff's Complaint is not bereft of information concerning exhaustion of administrative remedies, albeit the allegations therein and how they are connected to the administrative process are rather confusing to follow.  The confusion arises from parsing McEachin's First Amendment Retaliation claim from his Fourteenth Amendment Due Process Claim.  If the allegations were solely procedural due process, the fabrication of the misbehavior report being at the heart of his disciplinary process, the exhaustion of the administrative process is rather apparent.  Compl. at ¶ 6.  The pellucidity on the exhaustion issue as to McEachin's First Amendment Retaliation claim, and accordingly his Fourteenth Amendment Substantive Due Process Claim, isn't as apparent.  *Id.* at ¶ 7.  Plaintiff alleges that he did exhaust his administrative remedies as to the "facts alleged in his complaint" during his administrative appeal process, by discussing in some detail the various stages of administrative review and the participants' roles thereat.  However, he does not reveal in an equivalent degree of detail the substance or issues expostulated at each review level.  *Id.* at ¶ 4(c).  Similarly, Defendants, who have the burden of proof on this affirmative defense, merely counter with conclusory statements that administrative remedies were not properly exhausted.  Neither party, especially the Defendants, presented the administrative record to the Court which would have been definitive to determine whether McEachin indeed gave factual notice of all of his claims during the disciplinary process.[5]

---

[5]  By bringing solely a motion to dismiss, the Defendants have limited their ability to produce the administrative record.  FED. R. CIV. P. 12(b).  If on the other hand, the motion was one for summary judgment, the administrative record would have been expected.  FED. R. CIV. P. 12(b) & (c) (when matters outside the pleadings are submitted, which

We are required nonetheless to liberally construe McEachin's Complaint and give him every reasonable inference.  More specifically, by alleging that he exhausted his administrative remedies in the manner he has stated and accepting Plaintiff's allegations as true, at a minimum, the Complaints poses a question of fact as to whether McEachin exhausted his remedies with respect to his First Amendment claim.  *Johnson v. Testman*, 380 F.3d at 696.  It is the Defendants' burden to adequately present to the Court, at this stage of the litigation, their affirmative defense of Plaintiff's failure to exhaust his administrative remedies, which they have failed to meet.  *Jenkins v. Haubert*, 179 F.3d at  28-29 (2d Cir. 1999).  Therefore, Defendants' contention is premature and thus should be rejected at least at this stage of the litigation.[6]  *Howard v. Goord*, 1999 WL 1288679, at * 3 (Plaintiff "may delay the ultimate determination as to its validity until trial by showing that there is a genuine issue of material fact to be determined.").  Thus, we recommend that the parties engage in discovery on this issue.

We recommend on the issue of failure to exhaust that Defendants' Motion be **granted** without prejudice, as to the Fifth and Eighth Amendment claims and **denied** as to the First Amendment claim.  Even though we have found that there is a question of fact as to exhaustion as it may pertain to McEachin's First Amendment claims, the Court will not stop our analysis here nor wait for the unexhausted Eighth Amendment claim to be exhausted, but will proceed directly to

---

are not excluded by the court, the court may convert a motion to dismiss to a motion for summary judgment).

[6] Notwithstanding our recommendation regarding the sufficiency of Defendants' proof on their affirmative defense and that, at least on this issue, the litigation may proceed, we are still compelled to address another related issue espoused by the Defendants.  It is their considered posture on the exhaustion of administrative remedies that if there exists both exhausted and unexhausted claims in a case the Court is required to dismiss the complaint in its entirety. Defendants rely upon *Law v. Bergamini*, 2003 WL 133272 (N.D.N.Y. Jan. 16, 2003) in support of their assertion. However, the Second Circuit has recently addressed this matter of mixed actions, exhausted and unexhausted claims, and has ruled that dismissal in its entirety is not required.  *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004).

decide the merits of the claims.  *See Ortiz v. McBride*, 380 F.3d at 663.  The lack of exhaustion notwithstanding, the Court is permitted to consider whether the causes of action within the Complaint lacks merit.

### E.  Personal Involvement

It is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a § 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and furthermore, the doctrine of respondeat superior is inapplicable to § 1983 claims.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he:  (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (4) was grossly negligent in managing subordinates who caused the unlawful condition or event.  *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).  Pointedly, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim."  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (defendant may not be held liable simply because he holds a high position of authority).

In this respect, McEachin fails to allege facts demonstrating that Defendant Selsky had any direct involvement, knowledge of, or responsibility for any of the alleged acts.  The claims against Selsky are conclusory at best.  Because McEachin did not plead any facts to support that Selsky

*-13-*

violated his constitutional rights, the Motion to Dismiss as to Defendant Selsky should be **granted**.

### F.  Due Process Claims

#### 1.  False Misbehavior Reports

McEachin asserts that Defendant Porten filed a false misbehavior report against him. McEachin contends that he was not present at the time and place alleged in the January 5, 2001 mishebavior report written by Porten and, therefore, could not have violated any of the prisons rules listed therein.  Compl. at ¶ 6(E).  Additionally, McEachin makes the blanket statement that "all defendant[s] acted with practical intent to cause the wanton and unnecessary infliction of pain . . . by writing false bogus misbehavior report[s], bogus hearings, imposing bogus unlawful sanctions, and affirming charges all as a form of punishment [and] not for discipline."  *Id*. at ¶ 6(N).  This all-inclusive statement includes the May 8, 2001 misbehavior report lodged against McEachin by Defendant Androsko.  *Id.*

The Court notes that prisoners have no constitutional right to be free from being falsely accused.  *Freeman v. Rideout*, 808 F.2d 949, 950 (2d Cir. 1986) (holding that prison inmates do not have a "constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest[]").  Rather, the Constitution guarantees that such inmates will not be "deprived of a protected liberty interest without due process of law."  *Id*.  Thus, as long as the prison officials provided the inmate with procedural due process requirements, *i.e.*, a hearing and an opportunity to be heard, "the filing of unfounded charges d[oes] not give rise to a *per se* constitutional violation actionable under section 1983."  *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) (quoting *Freeman*, at 953); *see also Wolff v. McDonnell*, 418 U.S. at 564-66.

Notably, however, there are substantive due process rights, rather than procedural, which cannot be obstructed "even if undertaken with a full panoply of procedural protections," such as the right of access to courts or to be free from retaliation for exercising a constitutional right. *See Franco v. Kelly*, 854 F.2d at 857 (citing cases) ("Although our decision in *Freeman* accords prison officials wide latitude in disciplining inmates as long as minimum constitutional procedures are employed, . . . that latitude does not encompass conduct that infringes on an inmate's substantive constitutional rights."). Thus, if a prisoner alleges false disciplinary reports were filed against him in retaliation for exercising a valid constitutional right, the prisoner claim may survive a dispositive motion by properly alleging his substantive due process rights were violated. *See id.* ("If [plaintiff] can prove his allegation that he was subjected to false disciplinary charges and subsequent punishment for his [exercise of a constitutional right], he is entitled to relief under section 1983.").

### 1.a.  May 18, 2001 Misbehavior Report

We will address McEachin's misbehavior reports in inverse chronological order.  In the second fact scenario upon which McEachin initiated this instant action, the Complaint alleges that Defendant Androsko, a nurse, did not have legal authorization to issue a misbehavior report against him.  Compl. at ¶¶ 6(J)-(O) & 7.  McEachin's underlying premise for why Androsko lacked proper authorization in issuing a misbehavior report is purportedly found in Chapter XIV of the *Milburn* Consent Decree, dated August 1, 1991, which states, in part, "[i]n any case where disciplinary action is taken against an inmate for an interaction with a health care provider, the disciplinary report shall be written by security staff and not by the health care provider."  *Id.* at ¶ 6(O).  McEachin's reliance upon *Milburn* is fatally flawed.  *Milburn v. Coughlin,* 79 Civ. 5077 (RJW), was a class action brought to address several grievances at Green Haven Correctional Facility.  From that litigation a

series of Consent Decrees were issued which essentially governed the provision of health care services at Green Haven.  However, the *Milburn* Consent Decrees did not create a constitutional cause of action and thus does not provide a basis for a § 1983 claim for damages.  *Candelaria v. Coughlin,* 1994 WL 707004, at *7-8 (S.D.N.Y. Dec. 19, 1994) (citing *Green v. McKaskle,* 788 F.2d 1116, 1123 (5th Cir.1986) and *DeGidio v. Pung*, 920 F.2d 525, 534 (8th Cir. 1990) for the proposition that "[r]emedial court orders *per se* . . .  cannot serve as a substantive basis for a § 1983 claim for damages because such orders do not create rights, privileges, or immunities secured by the Constitution and laws") (internal citations omitted)).  More problematic for McEachin's assertion is the fact that the *Milburn* Consent Decree is not universal as he presumes but is restricted solely to the health care services at Green Haven, and thus it is inapplicable to this case.  *Candelaria*, 1994 WL 707004, at *8 (ruling that the plaintiff did not have any rights under the Consent Decree because he had been moved out of Green Haven).  Here, the circumstances giving rise to McEachin causes of action occurred at Auburn Correctional Facility.  Since *Milburn* has a limited remedial effect as to health services at Green Haven only and has no implication for this case, we must turn next to the appropriate rules and regulations that govern who or which DOCS employees may file a misbehavior report.

The governing regulations are not merely permissive but, rather, mandatory in that "every incident of inmate misbehavior . . . must be reported, in writing, as soon as practicable.  The misbehavior report shall be made by the <u>employee who has observed the incident </u>or who has ascertained the facts . . . ."  N.Y. COMP. CODE. R. REGS., tit. 7 § 251-3.1(a), (b) (emphasis added).  Defendant Androsko, a DOCS employee, is not only permitted but directed to file a misbehavior report when appropriate, even though she is not security staff.

Since Androsko has authority to register a misbehavior report against McEachin, we must determine if he has still adequately pled a due process claim.  As noted above, McEachin has no constitutional right to be free from false claims so long as he has been provided due process. Furthermore, McEachin has not claimed that Androsko retaliated against him nor that the hearing was flawed. The Supreme Court has set forth the Due Process requirements prisoners must be afforded in disciplinary hearings.  *See Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974).  In sum, prisoners must be afforded (1) advanced written notice of the charges against them at least twenty-four hours prior to the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) written statement as to the evidence relied upon and the reasons for the disciplinary action.  *Id.*; *see also Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986); N.Y. CODE R. & REGS. tit. 7 § 541.17(g).

In our instant case, notwithstanding his conclusory complaints, McEachin fails to allege that he was not afforded notice of the charge, an opportunity to be heard and present witnesses, and written statements upon which his conviction was granted and affirmed.  Moreover, McEachin does not challenge the method in which this overall review was conducted nor the adequacy of the hearing, therefore there is no procedural due process right infringed.  Accordingly, McEachin's blanket claims of a false misbehavior report, in and of itself, does not state a cognizable claim that his due process rights have been violated, and the cause of action against Androsko should be **dismissed**.

――――――

**1.b.  January 5, 2001 Misbehavior Report**

In reference to the January 5, 2001 misbehavior report, as noted above, McEachin has employed a broad and sweeping palette of causes of action alleged against all of the Defendants under the due process rubric.  With the exception of his First Amendment Retaliation claim, the due process claims are presented in an amorphous and less than lucid fashion.  Compl. at ¶ 6(N). Although these generalized theories of due process violations are interconnected by the facts, they are not so inextricably intertwined that they cannot be unraveled in order for this Court to address them independently so that we can determine if they state a cause of action.  As explained below, all of those procedural due process claims and allegations against Minnerly, no matter their nature or description, which are not retaliatory in nature, do not state a constitutionally protected cause of action and thus should be dismissed.  *Franco v. Kelly*, 854 F.2d at 857.  As to the facts that may support McEachin's claim of retaliation and substantive due process against Porten, insomuch as he may have been subjected to a false disciplinary charge and subsequent punishment for the exercise of his constitutional right to complain about other correctional officers, then this aspect of his due process claim may survive a motion to dismiss.  *Id*.  The procedural and substantive due process claims and retaliation claim as to all other Defendants are conclusory and lack specific facts and allegations.

**Due Process and Confinement**

Based upon both misbehavior reports, McEachin was sent to a Special Housing Unit (SHU) for a combined total of 160 days: (1) for the January 2001 Misbehavior Report, McEachin was confined to SHU for 120 days; and (2) for the May 2001 Misbehavior Report, he received 40 days in SHU.  Compl. at ¶¶ 6(F), (K).  During those times he lost certain privileges, such as phone and

commissary, and good time.  Compl. at ¶ 6(M).  Prison disciplinary process implicates a liberty

interest only when the discipline disposition "imposes atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484

(1995).  There is no bright line rule stating that a certain duration of confinement in SHU

automatically implicates a due process right.  *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).

The duration of SHU confinement,is not the only relevant factor; we must also consider the

abnormal or unusual conditions of the confinement.  *Ortiz v. McBride*, 380 F.3d at 654-55 (citations

omitted); *Palmer v. Richards,* 364 F.3d at 64 (citing *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir.

1999) for the proposition that both the conditions and the duration of SHU must be considered

together in determining atypical).  In *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998), the

Second Circuit ruled that in order to endure an atypical and significant hardship a court must

measure the "extent to which the conditions of the disciplinary segregation differ from the other

routine prison conditions" and the duration of the disciplinary segregation imposed."  This is

particularly true where the SHU confinement falls within an intermediate duration between 101 and

365 days.  *Palmer v. Richards*, 364 F.3d at 64-65 (citing *Colon v. Howard*, 215 F.3d 227, 231 (2d

Cir. 2000) (any SHU confinement longer than an intermediate may be a sufficient departure from

the ordinary incidents of prison life)).

   Filing a false misbehavior report does not create a liberty interest as McEachin believes.  *See*

Compl. at ¶ 6(F).  Neither does the length of McEachin's SHU confinements and the presumably

normal conditions under which he may have endured create a liberty interest, insofar as he did not

specifically set forth any abnormal or unusual conditions for a prison setting.  The entire time spent

in SHU, whether viewed independently or collectively, in and of themselves do not constitute an

*-19-*

atypical and significant hardship, without something more onerous being shown. *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999) (citing *Sandin*, 515 U.S. at 486 (30 days disciplinary segregation by itself did not constitute atypical and significant hardship)); *Palmer v. Richards*, 364 F.3d at 64-65 (disciplinary confinement between 101 and 365 days fall within the intermediate range of duration requiring a showing of onerous conditions as well); *Colon v. Howard*, 215 F.3d at 231-22 (confinement less than 101 days would not constitute atypical and significant hardship without allegations of unusual conditions). In searching the four corners of McEachin's Complaint, we find that it is deplete of any conditions of confinement which would take the confinement outside the expected realm of ordinary incidents of prison life. *Sandin,* 515 U.S. at 484-85. The loss of packages, commissary and phone are acceptable and normal SHU conditions and not considered unusual and unduly harsh.[7] Even if we were to find a liberty interest, the Complaint fails to demonstrate that McEachin was not afforded the minimum requirements of due process. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Taylor v. Rodriquez*, 238 F.3d 188, 192 (2d Cir. 2001). Therefore, as to Defendant Minnerly, we recommend that any claim against him be **dismissed**.

---

[7] In this case, as a part of his punishment, McEachin lost 180 days of good time. Compl. at ¶ 6(E). In some jurisdictions, a restraint that which "inevitably affect[s] the duration of [an inmate's] sentence" creates a liberty interest. *Burnell v. Coughlin*, 975 F. Supp. 473, 475 (W.D.N.Y. 1997) (citing *Sandin*, 515 U.S. at 478). The loss of good time which would shorten a prison sentence constitutes a liberty interest of real substance. *Sandin*, 515 U.S. at 477-78. Unlike the Nebraska statute discussed in *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), New York does not bestow a mandatory sentence reduction for good behavior. *Compare Marino v. Klages*, 973 F. Supp. 275, 279 (N.D.N.Y. 1997) (citing N.Y. CORRECT. LAW § 803 (1), (4): "No person shall have the right to demand or require the allowances authorized by this section."); *with Burnell v. Coughlin*, 975 F. Supp. at 475-76 (noting that New York Correction Law § 803 provides good time credit) *and Martinez v. Coombe*, 1996 WL 596553, at * 6 (N.D.N.Y. Oct. 15, 1996) (cited in *Burnell v. Coughlin*, 975 F. Supp. at 476 for the proposition that a liberty interest existed in retaining one's accrued good time). Based upon *Marino v Klages*, this Court finds *Martinez* and *Burnell* to be in error on this point and further finds that good time in New York, in and of itself, does not create a liberty interest.

**Retaliation**

The Plaintiff denotes his first cause of action as one sounding in retaliation: "The defendants knowingly and willfully partook in violating plaintiff['s] constitutional 1ˢᵗ [Amendment Rights] by retaliating against plaintiff for writing grievance and complaints against defendant Porten['s] co-workers after the [sic] beat plaintiff unnecessarily & six days prior, and other reports that were later dismissed." Compl. at ¶ 7.  Although McEachin accuses all of the Defendants of retaliation, essentially this cause of action is conclusory as to all of the Defendants except Porten, wherein the allegations are more specific and concrete.

The Second Circuit has made it clear, as stated above, that an inmate has a substantive due process right not to be subjected to false misbehavior charges or be harassed in retaliation for the exercise of a constitutional right such as petitioning the government for redress of grievances. *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir. 1995); *Franco v. Kelly,* 854 F.2d 584, 589-90 (2d Cir. 1988).  To state a First Amendment claim for retaliation, an inmate must demonstrate (1) he or she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected speech and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)); *see also Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002) (alleging false disciplinary report); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997) (alleging retaliatory transfers).

To satisfy the second prong, a prisoner must present evidence inferring that Defendants acted with an improper motive.  Such evidence includes but is not limited to: (1) temporal proximity between the protected activity and the alleged retaliatory act; (2) plaintiff's prior good disciplinary

record; (3) plaintiff's vindication at his disciplinary hearing; and (4) defendants' statements regarding their motive for the discipline. *See Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995). A plaintiff may meet this burden by presenting circumstantial evidence of a retaliatory motive, thus obviating the need for direct evidence. *Bennett v. Goord*, 343 F.3d.133, 139 (2d Cir. 2003) (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to, *inter alia*, the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citing *Dawes v. Walker*, 239 F.3d at 493). Otherwise, the retaliatory act is "*de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d at 493. Furthermore, in satisfying the causal connection requirement, also known as temporal proximity, the allegations must be "sufficient to support the inference that the speech played a substantial part in the adverse action." *Id*. at 492 (cited in *Davis*, 320 F.3d at 353).

The plaintiff bears the initial burden in showing that the defendant's actions were improperly motivated. In situations where the defendant's actions are the result of both retaliatory and legitimate reasons, the burden shifts to the defendants to show that they would have taken the same action absent the retaliatory motive. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)); *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994) (cited in *Carpio v. Walker*, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15,1997)); *see also Gayle v. Gonyea*, 313 F.3d at 682 (defendant may successfully meet this burden of

justification with regard to a particular punishment by demonstrating that "plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report").  The Second Circuit has noted that retaliation claims are prone to abuse, therefore courts should examine such claims "with skepticism and particular care."  *Bennett*, 343 F.3d at 137; *Dawes v. Walker*, 239 F.3d at 491 ("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act."); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996); *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983).

The court in *Flaherty* described three situations where retaliation is claimed, each situation requiring a different approach by the court: (1) a retaliation claim supported by specific and detailed allegations must be pursued with full discovery; (2) a claim that contains "completely conclusory" allegations may be dismissed on the pleadings alone; and (3) the third situation involves a complaint alleging facts that give rise to a "colorable suspicion of retaliation."  This third type of case will support at least documentary discovery.  *Carpio v. Walker*, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997) (citing *Flatherty v. Coughlin*, 713 F.2d at 13); *accord Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

In this instant case, the Plaintiff has made out a "colorable suspicion" retaliatory cause of action, albeit succinctly and barely.  There are sufficient allegations to support the inference that his complaints against other employees may have played a substantial part in the filing of the misbehavior report and the adverse consequences. There appears from the Complaint to be a temporal proximity between the protected activity, McEachin's grievance, and the alleged retaliatory act, that is, Porten's misbehavior report.  If these facts are true, and McEachin can

*-23-*

demonstrate an improper motive by the Defendants, he may be able to establish his claim.  On its

face, receiving a liberal construction, the Plaintiff has stated a cause of action for retaliation.[8]

## Heck Issue

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a § 1983 action

seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate

a criminal conviction or sentence unless the conviction had been reversed on direct appeal,

expunged by executive order, declared invalid by a state tribunal, or called into question by a federal

*habeas* court.  *Heck*, 512 U.S. at 486-88.  The *Heck* Court directed that "when a state prisoner seeks

damages in a § 1983 suit, the district court must consider whether a judgment in favor of the

plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the

complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has

already been invalidated." *Id*. at 487.  In construing the *Heck* Rule, the Second Circuit held that

> to comply with the *Heck* rule, a prisoner, as a prerequisite to maintaining his § 1983
> action, must establish that his conviction or sentence has been overturned or invalidated
> by an administrative board or a state court or a federal court in a habeas proceeding. Or,
> if the suit is not explicitly directed at an unlawful conviction or sentence, the prisoner
> must establish that his suit does not necessarily imply the invalidity of his conviction or
> sentence.

*Jenkins v. Haubert*, 179 F.3d 19, 24-25 (2d Cir. 1999) (citing *Heck*, 512 U.S. at 489).

The Supreme Court later extended their *Heck* ruling to situations where inmates challenge

disciplinary proceedings that resulted in a loss of good time credits wherein the validity of a

disciplinary or administrative sanction would affect the length of plaintiff's confinement.  *See*

---

[8]  But for this Court dismissing McEachin's retaliation claim, pursuant to *Heck v. Humphrey*, 512 U.S. 477
(1994), (*see infra* Heck Discussion ), we would be recommending denial of Defendants' motion to dismiss to permit
some discovery.  Defendants may be able to renew their Motion to Dismiss after documentary discovery has been
completed.  *Carpio v. Walker*, 1997 WL 642543, at *6.

*Edwards v. Balisok*, 520 U.S. 641 (1997).  However, the Second Circuit has clarified that where the challenged proceeding does not affect the overall length of the plaintiff's confinement, a §1983 action is not barred by *Heck* or *Edwards*.  *Jenkins v. Haubert*, 179 F.3d at 27.

In the case at bar, by virtue of his Complaint, McEachin is ineluctably challenging the very basis of his disciplinary conviction on the misbehavior reports and his confinement to segregated incarceration.  Thus, any determination of his civil damages claims, both the procedural and substantive due process claims (*i.e.*, retaliation), would ultimately call into question the validity of him being found guilty of violating prison rules.  His due process claims are therefore not cognizable under § 1983 absent a showing that his conviction or sentence has been overturned or invalidated.  *Higgins v. Coombe*, 1997 WL 328623, at * 9-10 (W.D.N.Y. June 16, 1997) (relying upon *Heck* and *Edward*s (citations omitted) the court dismissed all claims regarding both procedural due process defects and retaliation against all defendants); *see also McNeil v. Keane*, 1998 WL 148364, at * 4 (S.D.N.Y. Mar. 30, 1998 (for the proposition that a retaliatory claim is directly challenging the disciplinary hearings finding of guilt on the conduct charged within the misbehavior report).  McEachin has not made such a showing.  Thus, since Plaintiff has not, and cannot at this juncture, meet the prerequisite to bringing a § 1983 claim, and the bases of all of his due process claims, including his First Amendment Rights claim, as set forth within his Complaint call into question the validity of his conviction, thus this Court recommends, upon this and all other aforestated reasons, **granting** Defendant's Motion and **dismissing** all of Plaintiff's due process and retaliation claims against all of the Defendants.

## G.  Fifth Amendment Claim

McEachin contends that the Defendants violated his Fifth Amendment Rights, but he does

not provide us with facts explaining how such rights were violated.  Compl. at ¶ 7.  Once again,

McEachin's contention is misapprehended.  Contrary to his pleading, the Fifth Amendment,

generally speaking, does not provide a cause of action upon which grievances may be redressed,

with the exception of possibly the taking of property without just compensation of law.  Rather, the

primary focus of the Fifth Amendment is to provide an accused in a criminal case with a penumbra

of rights (*i.e.*, freedom from double jeopardy, self-incrimination, denial of liberty without due

process of law).  In any event, the Complaint does not set forth any reasonable set of facts upon

which we can liberally infer that any Fifth Amendment right, if they were invoked in this instant

action, was violated, and on this ground we recommend that the Defendants' Motion to Dismiss be

**granted**.

### H.  Eighth Amendment Claims

Similarly, McEachin complains that his Eighth Amendment rights were violated, but, once

again, only sets forth conclusory allegations barren of any specific facts other than his subjective

pain and suffering.  Compl. at ¶ 7.  The Eighth Amendment prohibits the infliction of cruel and

unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth

Amendment.  *Robinson v. California*, 370 U.S. 660, 666-67 (1962) (cited in *Tramell v. Keane, et

al.*, 338 F.3d 155, 161 (2d Cir. 2003)).  The plaintiff must allege conduct that is "repugnant to the

conscience of mankind or incompatible with the evolving standards of decency that mark the

progress of a maturing society."  *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992, *aff'd*, 970 F.2d

896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. 102, 105-06 (1976)) (internal quotations

omitted).  To prove a violation of the Eighth Amendment, the Second Circuit stated that an inmate

must show,

(1) that the deprivation alleged is 'objectively sufficiently serious' such that the plaintiff was denied 'the minimal civilized measure of life's necessities,' and (2) that the defendant official possessed a 'sufficiently culpable state of mind' associated with 'the unnecessary and wanton infliction of pain.'

*Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003) (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)); s*ee also Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991) (citations omitted).

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (cited in *Trammell*, 338 F.3d at 162). Punishments prohibited by the Eighth Amendment include those that are "grossly disproportionate" to the severity of the crime including unnecessary and wanton inflictions of pain which are "totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citations omitted); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002).

When the plaintiff is challenging prison conditions, the requisite scienter is that of deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. at 834. In *Farmer*, the Supreme Court indicated that a deliberately indifferent subjective state of mind may be inferred "from the fact that the risk of harm is obvious." *Id*. at 842 (cited in *Hope v. Pelzer*, 536 U.S. at 738). Notably, a recent Second Circuit decision highlighted the deliberate indifference standard when employing its analysis that an order depriving a prisoner of clothes, toilet papers, property, and other prison amenities did not constitute an Eighth Amendment violation. *Trammell*, 338 F.3d at 162-63 (citing *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (deliberate indifference applied when inmate was exposed to unsanitary conditions and prolonged cold) & *Blisset v. Coughlin*, 66 F.3d 531, 536-37 (2d Cir. 1995) (deliberate indifference applied when inmate was kept for several days in a dark unsanitary observation cell without any personal amenities)). In such

circumstances, the pre-meditated actions must not only be executed without deliberate indifference, but must also be reasonably calculated to restore prison discipline and security. *Trammell*, 338 F.3d at 163.

McEachin has failed to allege either the objective or subjective components required in order to established an Eighth Amendment violation. His Complaint, with the exception of his conclusory remarks that his confinement was "in-humane," is barren of any facts upon which this Court can construe any resemblance to an Eighth Amendment claim. Plaintiff has not alleged any facts which would support a contention that the Defendants acted with a sufficiently culpable state of mind, that being deliberate indifference. His confinement to a Special Housing Unit for a combined time of 160 days and a loss of good time, in and of themselves, without more, do not constitute cruel and unusual punishment. Accordingly, on this ground, we recommend that this Eighth Amendment cause of action be **dismissed** for failing to state a cognizable cause of action.

**WHEREFORE**, based on the foregoing, it is hereby

**RECOMMENDED,** that Defendants' Motion to Dismiss (Dkt. No. 14) based upon the Eleventh Amendment be **granted**; and it is further

**RECOMMENDED**, that Defendant Donald Selsky be dismissed from this action based upon the Plaintiff's failure to allege Selsky's personal involvement; and it is further

**RECOMMENDED**, that the Defendants' Motion to Dismiss with regard to their affirmative defense of failure to exhaust an administrative remedy be **granted** as to the Plaintiff's Fifth and Eighth Amendment claim and **denied** as to the Plaintiff's First Amendment claim, without prejudice; and it is further

**RECOMMENDED**, that the Defendants' Motion to Dismiss be **granted** in dismissing the Plaintiff's causes of action claiming a violations of his Fifth, Eighth, Fourteenth Amendments rights, as to all Defendants, with prejudice; and it is further

**RECOMMENDED**, that the Defendants' Motion to Dismiss be **granted** with respect to the Plaintiff's First Amendment Rights, without prejudice; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b), 6(a), & 6(e).

IT IS SO ORDERED

Dated:   March 23, 2005
         Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge