**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

GUY McEACHIN,

                                        Plaintiff,

        - v -                                                    Civ. No. 9:04-CV-0083
                                                                         (FJS/RFT)

DONALD SELSKY; JEFF MINNERLY;[1] VIRGINIA ANDROSKO;
PORTEN, *Corrections Officer*,

                                        Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

GUY McEACHIN
00-A-5257
Plaintiff, *Pro Se*
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821

HON. ANDREW M. CUOMO                          GARY M. LEVINE, ESQ.
Attorney General of the State of New York     Assistant Attorney General
Attorney for Defendants
144 Exchange Boulevard
Suite 200
Rochester, New York 14614

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

                    **REPORT-RECOMMENDATION and ORDER**

        *Pro se* Plaintiff Guy McEachin, currently incarcerated at Great Meadow Correctional

Facility, brings a civil rights action, pursuant to 42 U.S.C. § 1983, claiming violations of his rights

protected by the First, Fifth, Eighth, and Fourteenth Amendments. Dkt. No. 1, Compl. Throughout

---

[1] Defendants have submitted documents to the Court which bring to light the correct spelling of this Defendant's name as "Minerly," and not "Minnerly;" the Court will refer to this individual by the correct spelling. *See, e.g.*, Dkt. No. 55, Jeff Minerly Decl., dated May 12, 2009.

the protracted litigation history of this lawsuit, certain claims have survived, while others have met

their demise.  Pending before this Court is Defendants' Motion for Summary Judgment, pursuant

to Federal Rule of Civil Procedure 56.[2]  Dkt. No. 51-58 & 79.  Plaintiff opposes the Motion.  Dkt.

Nos. 76 & 78.  For the reasons that follow, it is recommended that Defendants' Motion be **granted**

and the entire Complaint be **dismissed**.

## I.  BACKGROUND

### A.  Underlying Facts[3]

At all times relevant to the issues raised in the Complaint, Plaintiff was under the custody

of the New York Department of Correctional Services (DOCS) and was housed at Auburn

Correctional Facility.  Dkt. No. 52, Defs.' Statement of Material Facts (hereinafter "Defs.' 7.1

Statement") at ¶ 1.  At the core of this litigation are two Misbehavior Reports (MR), which

according to Plaintiff, set off a series of constitutional affronts.

The first MR was issued on January 5, 2001, by Defendant Corrections Officer (CO) Jeffrey

Porten.  *Id*. at ¶ 2.  The January MR, which charges Plaintiff with violating Disciplinary Rules

106.10 (refusal to obey a direct order), 116.10 (inmates shall not misuse any type of state property),

102.10 (inmates shall not make any threats spoken, in writing or by gesture), and 107.11 (inmates

shall not harass employees verbally or in writing), states the following:

> On [January 5, 2001] and approximate time of 9:00 am while doing a round in A-
> tank on SHU-D south side[,] I passed by A-3 cell and noticed the inmate's blanket

---

[2] Approximately one month after Defendants filed their Motion for Summary Judgment, all deadlines were stayed to allow for the Honorable Victor Bianchini, Recalled United States Magistrate Judge, to preside over a mediation session.  Dkt. No. 59.  When that effort proved unsuccessful, the matter was referred back to this Court to address the pending Motion.  Dkt. No. 64.

[3] The Court notes that many of the essential facts are not truly contested.  Instead, the parties diverge as to the interpretation of these facts and whether constitutional rights were trespassed upon.

on the floor being used as a rug.  I then gave [I]nmate McEachin, G. 00-A-5257 a direct order to pick the blanket up off the floor.  Inmate McEachin, G. just stood there in the cell staring at me.  At that time I continued my rounds on the SHU-D south side.  Later on while doing another round on SHU-D south side passing through A-tank I looked into A-3 cell and observed inmate McEachin G.'s blanket still on the floor being used as a rug.  I then gave inmate McEachin, G. another direct order to pick up the blanket off the cell floor.  Inmate McEachin, G. then looked at me and said, "Fuck you! You white piece of shit, get away from my cell before kick [sic] your ass!"  Inmate McEachin then stated, "You better watch yourself when I come out of here."  At that time, I continued my rounds on the south side and notified the area supervisor of the incident at the end of the round.  Later at approximately 2:00 pm while doing another round on the south side, upon entering A-tank I noticed A-3 cell was open and the blanket still [illegible] on the floor.  At that time I confiscated the state blankets and returned them to SHU-D P-tank property room without further incident.

Dkt. No. 56, Jeffrey Porten Decl., dated May 29, 2009, Ex. A.

Though the MR addresses events occurring at different times throughout that day, the "incident time" reflected on the MR is 2:00 p.m.

On January 11, 2001, Defendant Jeff Minerly, Plant Superintendent, conducted a Tier III Disciplinary Hearing on the January MR.  Dkt. No. 55, Jeff Minerly Am. Decl., dated May 12, 2009, Ex. B.  In support of his "not guilty" plea, Plaintiff attacked the MR as non-conforming to DOCS Directives because the time reflected on the Report as the "incident time," 2:00 p.m., was not the correct time for all of the allegations and charges therein.  As an example, Plaintiff noted the allegation of verbal harassment was not alleged to have occurred at 2:00 p.m.  *Id.*  At the conclusion of the Hearing, Defendant Minerly found Plaintiff guilty of all charges and sentenced him to 120 days in a special housing unit (SHU) with corresponding loss of privileges and a recommendation of 180 days loss of good time credits.  *Id*, Ex. A.  On February 20, 2001, McEachin's disciplinary sentence was affirmed on appeal by Defendant Donald Selsky, Director of Special Housing/Inmate Disciplinary Program.  *Id*.

The second MR was issued by Defendant Nurse Virginia Androsko on June 9, 2001.[4]  Dkt. No. 54, Virginia Androsko Decl., dated May 18, 2009, Ex. A.  The June MR, which charges Plaintiff with violating Disciplinary Rules 107.10 (inmates shall not verbally obstruct or interfere with an employee) and 107.11 (inmates shall not verbally harass employees), states the following:

> When attempting to do sick call in K tank in SHU D Inmate McEachin was yelling about how he wants copies of sick call procedures and how they are to be done.  He was very loud preventing this writer to hear [sic] any requests for sick call.  During his tirade he was calling me a "fucking bitch and a mother fucker."  Sick call was ended in K-tank due to his interference and harassment.

*Id.*

The June MR bears the signatures of Nurse Androsko and Sergeant Martins, who is not a named party in this litigation.  *Id.*

On June 18, 2001, Joseph Wolczyk, who is not a named party in this litigation,[5] conducted a Tier III Disciplinary Hearing on the June MR.  Defs.' 7.1 Statement at ¶ 7; *see also* Dkt. No. 58-2, Joseph Wolczyk Decl., dated Mar. 10, 2009, Exs. A & B.  During the Hearing, Plaintiff claimed that the MR was false, as evidenced by the fact that there was no sick call on the date in question (purportedly a weekend day) and because his copy of the MR lacked a necessary second signature, without which, he claimed, Defendant Androsko lacked the authority to issue the Report.  Wolczyk Decl., Ex. B at pp. 4, 9-10, & 15-17.  At the conclusion of the Hearing, Officer Wolczyk found

---

[4] In their 7.1 Statement, Defendants erroneously list "May 8, 2001" as the date Androsko wrote her MR. Defs.' 7.1 Statement at ¶ 6.  In fact, the actual MR reflects the incident date as June 9, 2001, a point clarified by Defendants' counsel at Plaintiff's Deposition.  *See* Dkt. No. 58-3, Gary Levine Decl., dated June 5, 2009, Ex. A, McEachin Dep., dated Dec. 2, 2008, at p. 22.

[5] In his Opposition to Defendants' Motion, Plaintiff repeatedly refers to Officer Wolczyk as "Defendant Wolczyk," however, this individual was not named in his Original Complaint, nor has Plaintiff at any time attempted to amend his Complaint to add Wolczyk as a party to this litigation.  *Compare* Dkt. No. 76, Pl.'s Opp'n, at pp. 3, 6, & 11 (consistently making reference to "Defendant Wolczyk") *with* Compl. at pp. 1-2 (omitting Wolczyk's name from the listed parties) & 5 (no mention of Wolczyk by name nor any implication that the Hearing Officer violated his rights at the June Hearing).

Plaintiff guilty of both charges and sentenced him to forty (40) days in SHU with corresponding loss of privileges and a recommendation of two months loss of good time credit. *Id.*, Ex. A. On September 6, 2001, Defendant Selsky affirmed the Plaintiff's disciplinary sentence. Dkt. No. 58-3, Gary Levine Decl., dated June 5, 2009, Ex. C, Notice to Admit, Ex. F. On January 9, 2002, Plaintiff's request for reconsideration of his appeal was similarly denied by Defendant Selsky. *Id.*

## B. Procedural History

This action, which began on January 23, 2004, with the filing of Plaintiff's civil rights Complaint, has traversed certain procedural obstacles, including a dispositive motion and an appeal to the Second Circuit. We feel it necessary to recite certain aspects of this procedural history to ensure an understanding of what causes of action survived those procedural mileposts.

### 1. Plaintiff's Claims

We begin with a recitation of the causes of action raised in Plaintiff's Complaint.[6] Dkt. No. 1, Compl. As a result of the above described incidents, Plaintiff brought the instant action against Donald Selsky, Jeff Minerly, Virginia Androsko, and Jeffrey Porten asserting violations of his First, Fifth, Eighth, and Fourteenth Amendment rights. Succinctly, Plaintiff accuses Defendant Porten of falsifying the January MR in retaliation for an altercation that occurred on December 30, 2000, between McEachin and other COs at Auburn, and the grievances Plaintiff filed regarding that incident. Compl. at ¶¶ 6C-6D; Dkt. No. 76, Pl.'s Resp. in Opp'n to Defs.' Mot. at p. 7. McEachin asserts he not only filed grievances against the COs involved in the December 30th incident, but he

---

[6] The factual allegations underlying Plaintiff's claims are fleshed out more fully in his Response in Opposition to the Defendants' Motion for Summary Judgment. In light of his *pro se* status, we utilize all of his submissions to present a complete discourse of his claims for relief. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 & 475 (2d Cir. 2006) (noting that *pro se* submissions should be construed liberally "and interpreted so as to raise the strongest arguments that they suggest") (internal quotation marks, alterations, and citations omitted).

also initiated a federal civil rights suit against them and others in this District, *McEachin v. Goord, et al.*, Civ. No. 9:01-CV-259 (LES/GJD).  Pl.'s Resp. in Opp'n to Defs.' Mot. at p. 7.  Porten's January MR was issued six days after Plaintiff's altercation with the other COs.  Compl. at ¶¶ 6A, 6B, & 6F; Pl.'s Resp. in Opp'n to Defs.' Mot. at p. 7.  According to McEachin, Porten's MR, and Minerly's refusal to dismiss the false claims, resulted in violations of his First and Fourteenth Amendment rights.  Compl. at ¶¶ 6C-6G.  McEachin also claims that Minerly violated his Fifth and Eighth Amendment rights.  *Id*. at ¶ 6G.  As for Defendant Androsko, McEachin claims she had no authority to issue the June MR, which he also charges was false, and that, in authoring the MR, she violated the *Milburn* Consent Decree issued in the Southern District of New York in the class action case *Milburn v. Coughlin*, Civ. No. 79-CV-5077 (RJW), as well as Plaintiff's Eighth and Fourteenth Amendment rights.  *Id*. at ¶ 6J.  As for Defendant Selsky, Plaintiff claims that because he affirmed the appeals of both Disciplinary Hearing Dispositions, he shares responsibility for whatever constitutional rights were affronted.  *Id*. at ¶ 6L.

### 2.  *Magistrate Judge's and District Judge's Decisions*

On June 25, 2004, Defendants filed a Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted.  Dkt. No. 14.  After Plaintiff submitted his Opposition to the Motion, Dkt. No. 16, this Court issued a Report-Recommendation and Order on March 23, 2005.  Dkt. No. 19 (hereinafter "RRO").  Contained in that decision are the following recommendations:

   1) **Eleventh Amendment**: All claims against the Defendants in their official capacity should be dismissed pursuant to the Eleventh Amendment (RRO at pp. 5-6);
   2) **Exhaustion of Remedies**: Plaintiff properly exhausted his Fourteenth Amendment claims through his administrative appeals of the Disciplinary Hearings, however, he

failed to exhaust his Fifth and Eighth Amendment claims, and it was unclear whether he exhausted his First Amendment claim (RRO at pp. 6-13). Despite the mixed exhaustion action, the Court opted to proceed to the merits of each claim;

3) **Fifth Amendment**: Plaintiff's Fifth Amendment claims are not cognizable and should be dismissed (RRO at pp. 25-26);

4) **Eighth Amendment**: Plaintiff's allegations concerning the Eighth Amendment violations are conclusory and should be dismissed (RRO at pp. 26-28);

5) **Personal Involvement**: Defendant Selsky should be dismissed for lack of personal involvement (RRO at pp. 13-14);

6) **Fourteenth Amendment Due Process – Androsko June MR**:

a) The *Milburn* Consent Decree did not create a constitutional cause of action as a basis for § 1983 relief, and, in any event, it was only applicable to Green Haven Correctional Facility (RRO at p. 16);

b) Under New York Regulations, N.Y. COMP. CODE. R. & REGS., tit. 7 § 251-3.1(a) & (b), Nurse Androsko was permitted/directed to file a MR when appropriate (RRO at p. 16);

c) Plaintiff has no constitutional right to be free from being falsely accused absent an allegation of retaliation (RRO at p. 17);

d) Plaintiff does not allege any problem with the hearing procedure or the process received (RRO at p. 17);

e) Plaintiff's punishment of forty days in SHU fails to give rise to a liberty interest under *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (RRO at pp. 18-20;[7]

Thus, it was recommended that Defendant Androsko be dismissed from the action;

7) **Fourteenth Amendment Due Process – Minerly Disciplinary Hearing**: Concerning the due process claims stemming from Porten's January MR, Plaintiff's

---

[7] As mentioned above, Plaintiff did not name Joseph Wolczyk as a Defendant, even though he presided over the Disciplinary Hearing concerning the June MR. *See supra* note 5. In any event, our recommendation of dismissal would have extended to any due process claim against Mr. Wolczyk given the absence of a liberty interest. *See infra* Part II.B.1.

punishment of 120 days in SHU, without more, did not give rise to a liberty interest under *Sandin*, thus the claims against Defendant Minerly should be dismissed (RRO at pp. 18-20);

8) **Retaliation**: The retaliation/substantive due process claim against Defendant Porten should survive because a colorable suspicion of retaliation is set forth in the Complaint (RRO at pp. 21-24); and

9) *Heck* **Rule**: Because both Disciplinary Proceedings resulted in sanctions that affect the duration of Plaintiff's confinement, *vis-a-vis* recommendations for loss of good time credits, Plaintiff's due process claims (both procedural and substantive) and First Amendment retaliation claim are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Edwards v. Balisok*, 520 U.S. 641 (1997), thus, the only claim that would have survived the Motion, retaliation, should be dismissed on this basis (RRO at pp. 24-25).

Upon reviewing this Court's RRO, and the Plaintiff's Objections thereto, the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, issued a Memorandum Decision and Order, dated August 30, 2005, dismissing the entire case.  Dkt. No. 22 (hereinafter MDO).  Within that Order, Judge Scullin noted the following:

1) **Eleventh Amendment**: With no specific objection from Plaintiff, the claims against Defendants in their official capacity are dismissed pursuant to the Eleventh Amendment (MDO at pp. 5-6)

2) **Exhaustion of Remedies**: With no specific objection from Plaintiff, claims of Eighth Amendment violations were not exhausted and are dismissed (MDO at p. 9);

3) **Fifth Amendment**: With no objection from Plaintiff, the Fifth Amendment claims are dismissed (MDO at pp. 6-7);

4) **Eighth Amendment**: With no objection from Plaintiff, and despite the ruling of failure to exhaust, the Eighth Amendment claims are dismissed (MDO at pp. 9-11);

5) *Heck* **Rule**: All due process and retaliation claims against all Defendants are barred by *Heck* and *Edwards*, thus the Court declines to consider the underlying

-8-

merits of any of these claims (MDO at pp. 11-14).

Of particular importance, because Judge Scullin ruled that *Heck* and *Edwards* barred Plaintiff's due process and retaliation claims, he did not rule on this Court's recommendations regarding the merits of these claims.  Thereafter, a Judgment was entered in favor of Defendants and this case was closed. Dkt. No. 23.

### 3.  Plaintiff's Appeal to the Second Circuit

Plaintiff subsequently appealed that MDO to the Second Circuit on September 26, 2005. Dkt. No. 24.  During the pendency of McEachin's appeal of Judge Scullin's MDO, the Second Circuit issued its decision in *Peralta v. Vasquez*, 467 F.3d 98 (2d Cir. 2006), which had direct implications for this case.   The *Peralta* case concerned the situation, like ours, wherein an inmate attempts to challenge a disciplinary proceeding that resulted in mixed sanctions – those that affect the conditions of his confinement, such as a sentence of SHU confinement and/or loss of privileges, and those that affect the duration of his confinement, such as recommendations for loss of good time credit.  *Peralta v. Vasquez*, 467 F.3d at 99-100.   The inclusion of the latter sanction typically invoked *Heck's* "favorable termination rule," resulting in dismissal of the entire due process challenge.[8]   The Second Circuit ruled that a prisoner who received mixed sanctions at a prison disciplinary hearing could proceed with a challenge to the sanctions, as long as the inmate agrees to waive for all time any challenge to the sanction affecting the length of his confinement.   *Id*. at 104.

---

[8] The "favorable termination rule" set forth in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), directs that if a determination favorable to the plaintiff in a § 1983 action would "necessarily imply the invalidity of [the inmate's] conviction or sentence," there must first be a showing that the conviction or sentence had been reversed on direct appeal or declared invalid in order to recover damages for an allegedly unlawful conviction under § 1983.  In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court stated that the "favorable termination rule" is applicable to challenges made under § 1983 to procedures used in disciplinary proceedings that deprived a prisoner of good time credits.

On May 31, 2007, in ruling on McEachin's appeal, the Second Circuit determined that McEachin had presented a "mixed sanction" claim, much like what was presented in *Peralta*, and therefore vacated the District Court's judgment dismissing his claims under *Heck* and *Edwards*. Upon remand, the District Court was directed to provide Plaintiff with the opportunity to waive all claims relating to sanctions affecting the duration of his confinement so that he may proceed with claims challenging the sanctions affecting the conditions of his confinement. Dkt. No. 30.[9] Because McEachin did not challenge any other ruling rendered by Judge Scullin, those portions were affirmed. *Id*.

### 4.   *Remand to District Court*

In conformity with the Second Circuit Mandate, this Court issued an Order, dated September 26, 2007, advising Plaintiff of his opportunity to pursue his due process and retaliation claims if he was willing to forego any challenge to the sanctions affecting the duration of his confinement; such waiver was to be in writing.  Dkt. No. 31.  Eventually, after multiple extensions of time were provided, Plaintiff filed a letter, dated June 10, 2008, indicating his intention to waive any challenge to the sanction affecting the length of his confinement.  Dkt. No. 40.  Accordingly, Judge Scullin issued an Order dismissing Plaintiff's claims regarding the loss of his good time credits, and allowing Plaintiff to proceed with his retaliation claim and other challenges to those sanctions affecting the conditions of his confinement.  Dkt. No. 41 at p. 3.

After answering the Complaint and engaging in discovery, the Defendants filed the Motion

---

[9] As an aside, the Court notes that McEachin's appeal had been dismissed by the Circuit on September 29, 2006, due to McEachin's failure to comply with the Second Circuit's Scheduling Order.  Dkt. No. 28.  In viewing the Second Circuit's docket report for the appeal, it appears that McEachin moved for reinstatement of his appeal, which was duly granted on November 17, 2006.  *McEachin v. Selsky, et al.*, 06-PR-1230 (2d Cir.).  The Circuit did not issue its Mandate regarding the remand order until August 13, 2007.  *Id*.  Thereafter, McEachin moved for a rehearing *en banc*, which was denied on May 7, 2008, and issued as a Mandate on July 16, 2008.  *Id*.; *see also* Dkt. No. 43.

for Summary Judgment currently under review.  Dkt. No. 51.  In his Opposition to Defendants'

Motion, in addition to defending his case on the merits, Plaintiff seems to attack the written waiver

he previously submitted to the Court.  *See* Dkt. No. 76 at p. 13, McEachin Aff., dated Oct. 23, 2009.

Within his Affidavit, Plaintiff postulates that he was "force[d] into agreeing into an unlawful waiver

to waive any claim against [his] recommended loss of good behavior credit," and, further decries

that as a felon, he is somehow precluded by the Uniform Commercial Code into entering into a

contract.  *Id*. at ¶¶ 1-2.  We will not comment on the validity of Plaintiff's understanding regarding

his capability to enter into a contract as it may or may not relate to his written waiver.  What

concerns us, however, is whether by his Affidavit, Plaintiff seeks to rescind his written waiver.  Dkt.

No. 40.  To the extent that he is seeking recission, we recommend that the prior dismissal of all

claims be reinstated and this action **dismissed**.  *Peralta v. Vasquez*, 467 F.3d at 104.

Notwithstanding, because it is unclear to this Court what Plaintiff intended by this Affidavit, and

in light of his *pro se* status, we will consider the merits of his underlying claims.

## II.  DISCUSSION

### A.  Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only

where "there is no genuine issue as to any material fact and . . .  the moving party is entitled to

judgment as a matter of law."  The moving party bears the burden to demonstrate through

"pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ]

affidavits, if any," that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d

51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party

has moved for summary judgment on the basis of asserted facts supported as required by [Federal

*-11-*

Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing [that there is] a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*,

the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## B. Surviving Claims

After carefully reading both Judge Scullin's MDO and the Second Circuit's Remand Order, this Court concludes that the following claims were not reinstated via the Remand, and thus, remain dismissed: 1) official capacity claims against all Defendants; 2) Eighth Amendment claims; and 3) Fifth Amendment claims. Therefore, the only claims requiring our review are as follows: 1) due process claims against Defendant Androsko; 2) due process claims against Defendant Minerly; 3) due process and retaliation claims against Defendant Porten; and 4) supervisory liability claims against Defendant Selsky. We now consider each of these claims *seriatim*.

### 1. Due Process Claims Against Defendant Androsko

In our March 2005 RRO, prior to rendering a ruling on *Heck* and *Edwards*, we addressed Plaintiff's claims against Defendant Androsko on the merits. We reiterate that analysis herein.

The Complaint alleges that Defendant Androsko, a nurse, did not have legal authorization to issue an MR against him. Compl. at ¶¶ 6(J)-(O) & 7. McEachin's underlying premise for why Androsko lacked proper authorization is purportedly found in Chapter XIV of the *Milburn* Consent Decree, dated August 1, 1991, which states, in part, "[i]n any case where disciplinary action is taken against an inmate for an interaction with a health care provider, the disciplinary report shall be written by security staff and not by the health care provider." *See* Levine Decl., Ex. B, *Milburn*

*-13-*

Consent Decree, dated Aug. 1, 1991, at p. 24.  McEachin's reliance upon the *Milburn* case is fatally flawed.  *Milburn* was a class action brought in the Southern District of New York to address several grievances at Green Haven Correctional Facility.  *Milburn v. Coughlin,* 79 Civ. 5077 (RJW).  From that litigation, a series of Consent Decrees were issued that govern the provision of health care services at Green Haven.  However, the *Milburn* Consent Decree is not universal as McEachin presumes, but rather, is restricted solely to the health care services at Green Haven, and thus is inapplicable to this case since the circumstances giving rise to Plaintiff's claims occurred at Auburn. *Candelaria v. Coughlin*, 1994 WL 707004, at *8 (S.D.N.Y. Dec. 19, 1994) (ruling that the plaintiff did not have any rights under the Consent Decree because he had been moved out of Green Haven). More problematic for McEachin is the fact that the *Milburn* Consent Decrees do not create constitutional causes of action and thus do not provide a basis for a § 1983 claim for damages.  *Id.* at *7-8 (citing *Green v. McKaskle*, 788 F.2d 1116, 1123 (5th Cir. 1986) & *DeGidio v. Pung*, 920 F.2d 525, 534 (8th Cir. 1990) for the proposition that "[r]emedial court orders *per se* . . . cannot serve as a substantive basis for a § 1983 claim for damages because such orders do not create rights, privileges, or immunities secured by the Constitution and laws") (internal citations omitted)).  Since *Milburn* has a limited remedial effect as to health services at Green Haven, and has no implication for this case, we must turn next to the appropriate rules and regulations that govern which DOCS employees may file an MR.

The governing regulations are not merely permissive but, rather, mandatory in that "[e]very incident of inmate misbehavior . . . must be reported, in writing, as soon as practicable.  The misbehavior report shall be made by the employee who has observed the incident or who has ascertained the facts of the incident."  N.Y. COMP. CODE. R. & REGS., tit. 7 § 251-3.1(a) & (b)

(emphasis added).  Defendant Androsko, a DOCS employee, is not only permitted, but directed to file an MR when appropriate, even though she is not security staff.

Since Androsko has authority to register an MR against McEachin, we proceed to assess his due process claim.  At the conclusion of the June Disciplinary Hearing, Plaintiff was sentenced to forty (40) days in SHU with corresponding loss of privileges.[10]  We note that Plaintiff has not sued the Hearing Officer who presided over the Disciplinary Hearing regarding Androsko's June MR.  *See supra* notes 5 & 7.  Nevertheless, to the extent Plaintiff attempts to attribute due process violations to Defendant Androsko, he has many hurdles to overcome.

First and foremost, to state a due process claim under § 1983, an inmate must first establish that he enjoys a protected liberty interest.  *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).  Inmates' liberty interests are derived from two sources: (1) the Due Process Clause of the Fourteenth Amendment; and (2) state statute or regulations.  *Id.*  With regard to liberty interests arising directly under the Due Process Clause, the Supreme Court has "narrowly circumscribed its scope to protect no more than the 'most basic liberty interests in prisoners[,]'" *Arce v. Walker*, 139 F.3d at 333 (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)), and limited to freedom from restraint that "exceed[] the sentence in . . . an unexpected manner[,]" *Sandin v. Conner*, 515 U.S. 472, 478 (1995).  In this case, Plaintiff has not described the environment in SHU as so heinous as to invoke the protections afforded by the Due Process Clause itself.  We find that his confinement in SHU for forty (40) days, under normal SHU conditions, did not implicate any liberty interest derived directly from the Due Process clause.  *See, e.g.*, *Black v. Selsky*, 15 F. Supp. 2d 311, 314 (W.D.N.Y. 1998).

---

[10] He further received a recommendation of sixty (60) days loss of good time credits, which is no longer at issue in this litigation.

Turning to liberty interests created by the state, the Supreme Court states that such liberty interests shall be limited solely to those deprivations which subject a prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. at 484; *see also Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citing *Sandin*); *Welch v. Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999). In determining whether a confinement imposes an atypical and significant hardship, courts are directed to look at both the duration and conditions of the confinement. *Ortiz v. McBride*, 380 F.3d 649, 654-55 (2d Cir. 2004) (citations omitted); *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir. 2004) (citation omitted). With regard to duration, the Second Circuit cautions there is no bright line rule stating that a certain duration of confinement in SHU automatically implicates a liberty interest. *Palmer v. Richards*, 364 F.3d at 64; *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999) (citations omitted). Nevertheless, courts within the Second Circuit tend to rule, as a matter of law, that "disciplinary keeplock or SHU confinement to 60 days or less in New York prisons is not an atypical or significant hardship in relation to the ordinary incidents of prison life." *Edmonson v. Coughlin*, 1996 WL 622626, at *4-5 (W.D.N.Y. Oct. 4, 1996) (citing cases).

During his Deposition, Plaintiff was asked to expound upon the conditions he endured while serving his forty-day sentence in SHU. Levine Decl., Ex. A, Pl.'s Dep. at pp. 28-29. Plaintiff described nothing more than normal SHU conditions. *Id*. Though confined to his cell most of the day, he admitted he was provided meals, mail, legal materials, medical care, and recreation, though he claimed, without substantiation or specifics, that he was occasionally denied recreation time. *Id*. at pp. 30-32. It is expected that confinement in SHU will be accompanied by a loss of privileges that prisoners in the general population enjoy and such conditions fall "within the expected parameters

*-16-*

of the sentence imposed by a court of law." *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996) (quoting *Sandin v. Connor*, 515 U.S. at 485 for the proposition that loss of commissary, recreation, package, and telephone privileges does not amount to an atypical and significant deprivation). Accordingly, we find that Plaintiff's forty-day confinement to SHU under normal SHU conditions did not implicate a state created liberty interest, thus no due process violation is assessed.

With regard to Plaintiff's claim that the June MR was untrue, we note that the filing of a false MR by itself does not create a liberty interest as McEachin believes. Similarly, prisoners have no constitutional right to be free from false claims, so long as they are provided due process. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) (holding that prison inmates do not have a "constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest[]"). Thus, as long as the prison officials provided the inmate with procedural due process requirements, *i.e.*, a hearing and an opportunity to be heard, "the filing of unfounded charges d[oes] not give rise to a *per se* constitutional violation actionable under section 1983." *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) (quoting *Freeman v. Rideout*, 808 F.2d at 953); *see also Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974). McEachin does not charge Androsko with authoring a false report as retaliation for his engagement in constitutionally protected activity. Nor, for that matter, does he claim that the Hearing itself was flawed. Nevertheless, based upon his allegation of falsity, we look to the process he received to ensure its adequacy.

The Supreme Court has set forth the Due Process requirements prisoners must be afforded in disciplinary hearings. *See Wolff v. McDonnell*, 418 U.S. at 564-66. In sum, prisoners must be afforded (1) advanced written notice of the charges against them at least twenty-four hours prior to

*-17-*

the hearing; (2) the opportunity to appear at the hearing, call witnesses, and present rebuttal evidence; and (3) a written statement as to the evidence relied upon and the reasons for the disciplinary action. *Id.*; *see also Freeman v. Rideout*, 808 F.2d at 953.

In our case, notwithstanding his conclusory allegations, it is clear that McEachin was provided all the process he was due in the form of advance written notice of the charges, help in preparing his defense, receipt of evidence requested, opportunity to be heard and present witnesses, and receipt of a written statement of the reasons for the conviction, which was affirmed on appeal. *See generally* Wolczyk Decl., Exs. A & B.  Accordingly, McEachin's blanket claim of a false misbehavior report, in and of itself, does not state a cognizable claim that his due process rights were violated and it is clear that he was provided constitutionally adequate process during the June Hearing.  In sum, we recommend that all claims against Defendant Androsko be **dismissed**.

### 2. *Due Process Claims Against Defendant Minerly*

In our March 2005 RRO, prior to rendering a ruling on *Heck* and *Edwards*, we addressed Plaintiff's claims against Defendant Minerly on the merits.  We reiterate that analysis herein.

Following the January MR issued by Defendant Porten, Defendant Minerly conducted a Disciplinary Hearing wherein he found Plaintiff guilty of all charges and sentenced him to 120 days in SHU with corresponding loss of privileges.[11]  Minerly Decl., Ex. A.  Plaintiff accuses Minerly of being biased during the Hearing and violating his due process rights by finding him guilty of charges in the patently false and retaliatory MR authored by Defendant Porten.

We incorporate the above standard regarding liberty interests and add the following to the discussion.  In *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998), the Second Circuit ruled that

---

[11] Plaintiff also received a recommendation of 180 days loss of good time credits, which is no longer at issue in this litigation.

*-18-*

in order to endure an atypical and significant hardship a court must measure the "extent to which the conditions of the disciplinary segregation differ from the other routine prison conditions" and the duration of the disciplinary segregation imposed." This is particularly true where the SHU confinement falls within an intermediate duration between 101 and 365 days. *Palmer v. Richards*, 364 F.3d at 64-65 (citing *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) for the proposition that any SHU confinement longer than an intermediate duration may be a sufficient departure from the ordinary incidents of prison life).

Nowhere within his Complaint, nor in other portions of the record, does McEachin assert that his conditions in SHU were outside the expected realm of ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. at 484-85. The loss of packages, commissary, and phone privileges are acceptable and normal SHU conditions and not considered unusual or unduly harsh. Yet, even if we were to find a liberty interest was implicated, it is clear that, like in his June Disciplinary Hearing, McEachin was afforded the minimum requirements of due process in that he received advanced written notice of the charges against him, aid in rendering a defense, opportunity to be heard, and a written disposition of the decision and basis for guilt determination. *Wolff v. McDonnell*, 418 U.S. at 556; *Taylor v. Rodriguez*, 238 F.3d 188, 192 (2d Cir. 2001); Minerly Am. Decl., Exs. A & B. Therefore, as to Defendant Minerly, we recommend that any claim against him be **dismissed**.

### 3. Retaliation Claims Against Defendant Porten

Plaintiff claims that Defendant Porten issued him a false MR as retaliation for Plaintiff having submitted grievances over an altercation with prison staff that occurred six days prior to his alleged confrontation with Porten. In rendering our March 2005 RRO on the Defendants' Motion

to dismiss, we noted that we were obligated to take the Plaintiff's allegations as true and assess whether his retaliation claim was plausible. Under that standard, we determined that the temporal proximity of the alleged constitutionally protected activity and the Porten MR gave a thin colorable suspicion of wrongdoing, thus entitling Plaintiff to some discovery on this issue. Now, at the summary judgment stage, we are able to look at the matter more globally to assess whether Plaintiff has interjected a material issue of fact, thus precluding summary judgment.

### a. Exhaustion of Retaliation Claim

We start with an issue we left undecided in March 2005 – whether Plaintiff properly exhausted his retaliation claim. In our March RRO, we stated the following standard with regard to exhaustion:

> The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that for actions brought by prisoners under 42 U.S.C. § 1983, the inmate must first exhaust his or her administrative remedies. The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is similarly required even if the prisoner asserts futility as an excuse. *See Booth v. Churner*, 531 U.S. 731, 741 n.6 (2001) (refusing to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise") (cited in *Marvin v. Goord*, 255 F.3d 40, 43 (2d Cir. 2001)). . . .
>
> In New York State, the administrative remedies consist of a three-step review process. First, a grievance is submitted to the Inmate Grievance Review Committee ("IGRC"), a committee comprised of both inmates and facility employees.[12] The IGRC reviews and investigates the formal complaints and then issues a written determination. Second, if the IGRC decision is appealed, the superintendent of the facility reviews the IGRC's determination and issues a decision. Finally, if the superintendent's decision is appealed, the Cental Office Review Committee ("CORC") makes the final administrative determination. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.7. Upon exhaustion of these three levels of review, a prisoner may seek relief pursuant to § 1983 in federal court. *Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing *Sulton v. Greiner*, 2000 WL 1809284, at *3

---

[12] The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chair (who may be an inmate, staff member of volunteer). N.Y. Comp. Codes R. & Regs tit. 7, § 701.4.

(S.D.N.Y. Dec.11, 2000)); *Petit v. Bender*, 2000 WL 303280, at *2-3 (S.D.N.Y. Mar. 22, 2000).

March RRO at pp. 6-7.

We then noted, *inter alia*, Plaintiff's diametrically opposing accounts of his exhaustion efforts with regard to his retaliation claim against Defendant Porten.  On the one hand, Plaintiff claimed that his retaliation claim was not a grievable issue, which was juxtaposed against his alternate justification wherein he claimed that he complained to prison authorities by "fil[ing] an administrative appeal with Defendant Selsky . . . and fil[ing] a Reconsideration to Defendant Selsky."  RRO at pp. 8-9 (referencing Plaintiff's Complaint at ¶¶ 4(b)(ii) & 4(c)(i)).  Some of the confusion was created by Plaintiff when he lumped his First Amendment claims with his Fourteenth Amendment due process claims in his Complaint.  After disabusing McEachin of the fallacy of his understanding of grievable/non-grievable issues, we analyzed Plaintiff's second explanation of exhaustion through the administrative appeal process.  *Id*. at pp. 9-10.  At that time, without the full record to assess the viability of this claim, and giving Plaintiff the proper reasonable inferences, we found that a question of fact existed as to whether he properly exhausted his First Amendment claim.  *Id*. at pp. 11-12.

Now, with a comprehensive record before us, it remains dubious whether Plaintiff actually exhausted his administrative remedies with regard to his retaliation claim.  In support of summary judgment, Defendants submit a Declaration from Chris Lindquist, Assistant Director of Inmate Grievance Program of DOCS.  Dkt. No. 58, Chris Lindquist Decl., dated May 12, 2009.  Mr. Lindquist states he is one of the custodians of the records maintained by the Central Office Review Committee (CORC), and submitted a printout of CORC appeals filed by McEachin from Auburn in 2001.  *Id*., Ex. A.  Amongst the listed appeals are two Grievances filed on January 5, 2001, the same date Defendant Porten authored the January MR; the Grievances are as follows: 1) AUB-

34251-01, Denied Proper Amount of Food; and 2) AUB-34253-01, Assaulted at Strip Frisk. *Id.*

Because we do not have the actual Grievances, we do not know whether Plaintiff included his

retaliation allegations therein, though it appears at least from the title of the Grievances that

retaliation is not the major complaint listed therein.  While Plaintiff continues to maintain that he

submitted grievances on this issue, he failed to produce any copies of any such grievance, or, for that

matter, copies of his Hearing Appeals so we could assess whether he included the complaints

therein.  One thing we have before us is the transcript from the January Hearing, and, pointedly, at

no point during that Hearing does Plaintiff allege retaliatory animus on Porten's part.  In fact, the

only thing McEachin attacks during the Hearing is whether the "incident time" on the MR is

accurate.  *See* Minerly Decl., Ex. B.  Based upon the record before us, coupled with Plaintiff's

conflicting explanations and lack of evidence to create an issue of material fact, we find that

McEachin has not properly exhausted his First Amendment retaliation claim and it should be

**dismissed** for that reason.

        In the alternative, as explained below, we find that Plaintiff's retaliation claim should be

dismissed on the merits.

### b.  Merits of Retaliation Claim

        It is well settled, as noted above, that prisoners have no constitutional right to be free from

being falsely accused.  *Freeman v. Rideout*, 808 F.2d at 951.  As long as prison officials provided

the inmate with procedural due process requirements, *i.e.*, a hearing and an opportunity to be heard,

"the filing of unfounded charges d[oes] not give rise to a *per se* constitutional violation actionable

under section 1983."  *Franco v. Kelly*, 854 F.2d at  587 (quoting *Freeman v. Rideout*, 808 F.2d at

953); *see also Wolff v. McDonnell*, 418 U.S. at 564-66.

We have already assessed that Plaintiff received all the process due in conjunction with the January MR. Notably, however, there are substantive due process rights, rather than procedural, which cannot be obstructed "even if undertaken with a full panoply of procedural protections," such as the right of access to courts or to be free from retaliation for exercising a constitutional right. *See Franco v. Kelly*, 854 F.2d at 589 (citation omitted). Thus, if a prisoner alleges false disciplinary reports were filed against him in retaliation for exercising a valid constitutional right, the prisoner's claim may survive a dispositive motion by properly alleging his substantive due process rights were violated. *See id*. at 590.

The Second Circuit has made it clear that an inmate has a substantive due process right not to be subjected to false misbehavior charges or be harassed in retaliation for the exercise of a constitutional right such as petitioning the government for redress of grievances. *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir. 1995); *Franco v. Kelly*, 854 F.2d at 589-90. To state a First Amendment claim for retaliation, an inmate must demonstrate (1) he or she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected speech and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002), *abrogated on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002), (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)); *see also Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002) (alleging false disciplinary report).

No evidence has been submitted in this case regarding the protected conduct Plaintiff alleges to have engaged in, thereby provoking the purported retaliatory wrath of Defendant Porten. To ensure a complete record, the Court takes judicial notice of documents submitted in Plaintiff's civil

rights case regarding the December 30th altercation.[13]  *See McEachin v. Goord, et al.*, Civ. No. 9:01-

CV-259 (LES/GJD).  These documents were submitted by Assistant Attorney General Maria Moran

in support of the defendants' motion for summary judgment and were relied upon by all parties and

the District Judge.  *Id.*, Dkt. No. 30, Maria Moran Affirm., dated July 15, 2002 (with exhibits

attached, but separately filed as Dkt. No. 32).  Of specific relevance to our case is McEachin's

inmate grievance, dated January 3, 2001, which was stamped "received" on January 5, 2001.  *Id.*,

Ex. C.  The grievance contains the number "34253-01" and relays an altercation between Plaintiff

and COs during a strip frisk on December 30, 2000.  *Id.*  Incidentally, this grievance is also listed

on the printout provided to the undersigned by Mr. Lindquist as Grievance Number AUB-34253-01,

filed on January 5, 2001, entitled "Assault at Strip Frisk."  Dkt. No. 58-1, Lindquist Decl., Ex. A.

Further substantiation is found in the companion case with the "Use of Force Report" and

"Misbehavior Report" generated after the December 30th incident.  *McEachin v. Goord, et al.*, Civ.

No. 9:01-CV-259, Moran Affirm., Exs. A & B.

In light of this judicially noticed information, we may for the moment concede that Plaintiff

engaged in constitutionally protected conduct and satisfies the first prong of his retaliation claim.

*See United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967)

---

[13] Federal Rule of Evidence 201(b) provides that "a judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Furthermore, a court may take judicial notice on its own initiative at any stage of the proceeding.  FED. R. EVID. 201(c) & (f).  The documents filed in a court satisfy prong two, and therefore can be considered by this Court in considering the Motion for Summary Judgment.  *See Sea Tow Servs. Int'l, Inc. v. Pontin*, 607 F. Supp. 2d 378, 384 n.10 (E.D.N.Y. 2009) (citing cases); *Desclafani v. Pave-Mark Corp.*, 2008 WL 3914881, at *5 n.7 (S.D.N.Y. Aug. 22, 2008) (citing cases).  Furthermore, these records to which we take judicial notice are prison records which fall into the business records exception to the hearsay rule, found in Federal Rule of Evidence 803(6), since they are "kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation."  Indeed, all parties and the District Judge relied upon the documents submitted by Assistant Attorney General Maria Moran in that case, which ultimately went to trial.  These same exhibits were admitted at the trial as well.  *See McEachin v. Goord, et al.*, Civ. No. 9:01-CV-259 (LES/GJD) Dkt. Nos. 75-1, Defs.' List of Exs., & 101, Ct.'s List of Exs. returned to Defs.

(noting that the right to petition government for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights"); *Franco v. Kelly*, 854 F.2d at 589 (holding that, within the prison context, "inmates must be permit[ted] free and uninhibited access . . . to both administrative and judicial forums for the purpose of seeking redress of grievances against state officers.") (internal quotation marks and citation omitted).  And, we can easily find that the issuance of the MR is an adverse action since it is "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights[.]"  *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citing *Dawes v. Walker*, 239 F.3d at 493).  Thus satisfying the second prong of the retaliation claim.  But our analysis does not end there, for Plaintiff must satisfy the third prong by linking the adverse action to the protected activity.

To satisfy the third prong, a prisoner must present evidence that the defendant acted with an improper motive.  Such evidence includes: (1) temporal proximity between the protected activity and the alleged retaliatory act; (2) plaintiff's prior good disciplinary record; (3) plaintiff's vindication at his disciplinary hearing; and (4) defendants' statements regarding their motive for the discipline.  *See Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995).  A plaintiff may meet this burden by presenting circumstantial evidence of a retaliatory motive, thus obviating the need for direct evidence.  *Bennett v. Goord*, 343 F.3d 133, 139 (2d Cir. 2003).  Furthermore, in satisfying the causal connection requirement, the allegations must be "sufficient to support the inference that the speech played a substantial part in the adverse action."  *Dawes v. Walker*, 239 F.3d at 492 (internal quotation marks and citations omitted) (cited in *Davis v. Goord*, 320 F.3d at 353).

The plaintiff bears the initial burden in showing that the defendant's actions were improperly motivated.  In situations where the defendant's actions are the result of both retaliatory and

Case 9:04-cv-00083-FJS-RFT   Document 80   Filed 03/30/10   Page 26 of 29

legitimate reasons, the burden shifts to the defendants to show that they would have taken the same action absent the retaliatory motive. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing, *inter alia*, *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)); *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994) (cited in *Carpio v. Walker*, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15,1997)).   The Second Circuit has noted that retaliation claims are prone to abuse, therefore courts should examine such claims "with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d at 872 (citation omitted); *Dawes v. Walker*, 239 F.3d at 491 ("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." (citation omitted)); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

As noted above, Plaintiff proffers that the January MR was false and retaliatory.  During the Hearing, he only attacked the time indicated on the MR.  In this litigation, through his Complaint, during his Deposition, and in his Opposition papers, Plaintiff expounds upon his theory of retaliation and asserts he was not present in his cell during the time stated in the MR, thus, it is clearly false and could only have been issued for retaliatory purposes.  *See* Compl. at ¶¶ 6A, B, & F; Levine Decl., Ex. A, Pl.'s Dep. at pp. 13 & 18-19; Dkt. No. 76 at pp. 2, 6, & 8.  Plaintiff is correct in stating he was not in his cell at 2:00 p.m. on January 5, 2001, the time the MR was written.  In fact, from judicially noticed evidence, it is clear that Plaintiff was attending a disciplinary hearing in conjunction with the December 30th incident.  *See McEachin v. Goord*, Civ. No. 9:01-CV-259, Dkt. No. 32, Exs. D & E (records from Plaintiff's Tier III Disciplinary Hearing certifying his attendance at the hearing, which commenced on January 5, 2001, at 1:49 p.m.).  Indeed, the Porten MR corroborates Plaintiff's absence at the two o'clock hour.   Porten Decl., Ex. A ("Later at

approximately 2:00 pm . . . I noticed [McEachin's] cell was open and the blanket still on the floor."). Clearly, Plaintiff was absent from his "open" SHU cell at that time.  Plaintiff, however, does not claim he was absent during the other times identified in the MR, like the altercation allegedly occurring at 9:00 a.m., and soon thereafter.  *Id*.  From the documents submitted to the Court, including a redacted copy of the log book, it is clear that McEachin had a brief call-out in the morning for an x-ray at 8:25 a.m. and returned at 8:45 a.m., just in time for the 9:00 a.m. altercation. Minerly Am. Decl., Ex. B.  Furthermore, Defendant Porten declares under penalty of perjury that the MR was based upon his "observed conduct" of Plaintiff and without retaliatory animus.  He also avers to have been unaware of the December 30th altercation and the related grievance.  And, further dwindling Plaintiff's ability to connect his protected activity with the adverse MR is the fact that the grievance at issue was submitted by Plaintiff on the very same date the MR was written, making it unlikely that Porten would have been aware of it when he simultaneously wrote his MR.

Based on the above analysis, we find that Plaintiff has not raised sufficient material facts with regard to the causal connection between his protected activity and the adverse action taken against him. Thus, his retaliation claim against Defendant Porten should be **dismissed** on this basis as well.

### 4. Supervisory Liability of Defendant Selsky

Plaintiff seeks to hold Defendant Selsky liable solely for his role in affirming the appeals of his Disciplinary Hearings.

It is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a § 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and furthermore, the doctrine of respondeat superior is inapplicable to § 1983 claims.  *Polk County*

*-27-*

*v. Dodson*, 454 U.S. 312, 325 (1981) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)); *see also Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987) ("[I]t is well settled that to state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983") (citations omitted).

The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he:  (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (4) was grossly negligent in managing subordinates who caused the unlawful condition or event.  *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted). Pointedly, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (defendant may not be held liable simply because he holds a high position of authority).

Because, as explained fully above, no constitutional violations befell Plaintiff, there can be no supervisory liability assessed against Defendant Selsky.  Thus, any claim against Selsky should be **dismissed**.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

*-28-*

**RECOMMENDED**, that, to the extent Plaintiff rescinds his explicit, written waiver of his challenge to the sanctions affecting the duration of his confinement (Dkt. No. 40), the prior dismissal of all claims should be reinstated and the entire Complaint **dismissed**; and it is further

**RECOMMENDED**, in the alternative, after reviewing the merits of the underlying claims, the Defendants' Motion for Summary Judgment (Dkt. No. 51) should be **granted** and the entire Complaint be **dismissed**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   March 30, 2010
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge